UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

VELMA W. TEZENO                                    CIVIL ACTION NO. 07-1070
DAVID TEZENO

VS.                                                JUDGE DOHERTY

LAMARCHE ZEIK CLARK & LEBRON          MAGISTRATE JUDGE METHVIN
 PROPERTIES II
BIO-MEDICAL APPLICATIONS OF LA, LLC

*RULING ON MOTION TO REMAND*
*(Rec. Doc. 18)*

Before the court is the motion to remand filed by plaintiffs Velma W. Tezeno and David

Tezeno on July 23, 2007.[1]  Defendant Bio-Medical Applications of Louisiana, L.L.C. opposes the

motion.[2]  For the following reasons, the motion is **GRANTED.**

*Background*

Plaintiffs allege as follows:  In June, 2006, Velma Tezeno was an employee of

Evangeline Council on Aging.  Tezeno's duties included transporting people to various medical

facilities.  On June 26, 2006, Tezeno brought a passenger to Bio-Medical Applications of

Louisiana for treatment.  When Tezeno was leaving, she slipped on a rug that was located inside

the building, which allegedly had excessive water under it.  As a result of the incident, Tezeno

suffered injuries to her "cervical, thoracic and lumbar spines, injuries to her limbs including legs,

and bruises about her body."[3]  Tezeno's husband seeks damages for loss of consortium.

---

[1] Rec. Doc. 18.

[2] Rec. Doc. 22.

[3] Rec. Doc. 1-2.

2

On May 22, 2007, plaintiffs filed a Petition for Damages in the 13th Judicial District Court for Evangeline Parish, Louisiana against: 1) FMC Corporation, a Delaware corporation with its principal place of business in the state of Pennsylvania; 2) FMC Corporation of North America, a Delaware corporation with its principal place of business in Delaware; 3) persons doing business under the trade name of FMC Dialysis Services of Ville Platte; and 4) LaMarche[4], Zeik, Clark & Lebron Properties II ("LaMarche"), a Louisiana partnership.[5]

On June 21, 2007, the case was removed to this court by Bio-Medical Applications of Louisiana, L.L.C. d/b/a FMC Dialysis Services of Ville Platte ("BMA"), a Delaware corporation with its principal place of business in Massachusetts.[6]  On June 25, 2007, plaintiffs filed a First Supplemental Complaint adding BMA as a named defendant.  On June 29, 2007, the district judge granted plaintiffs' voluntary motion to dismiss all claims against FMC Corporation and FMC America.  Thus, the only remaining defendants are BMA and LaMarche (a Louisiana partnership, whose partners are citizens of Louisiana).[7]

On July 23, 2007, plaintiffs filed the instant motion to remand for lack of subject matter jurisdiction because the parties are not completely diverse.[8]  BMA opposes the motion,

---

[4] The petition names "Lamarch...," however, in its answer, LaMarche clarifies the spelling of its name.  Rec. Doc. 24.

[5] Rec. Doc. 1-2.

[6] Rec. Doc. 9.

[7] Rec. Doc. 1 at p. 4.

[8] Rec. Doc. 18.

3

maintaining that LaMarche was improperly joined, and therefore, complete diversity exists

between the properly joined defendant and plaintiff.[9]

### *Legal Analysis*

A party may remove an action from state court to federal court if the action is one over

which the federal court possess subject matter jurisdiction.  28 U.S.C. §1441(a).  The removing

party bears the burden of showing that federal jurisdiction exists, and that removal was proper.

Manguno v. Prudential Property & Casualty Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).  Whether

jurisdiction is present for removal purposes is dependent upon the claims in the state court

petition as they existed at the time of removal.  Id.  As the removal statute is to be strictly

construed in favor of remand, any ambiguities are construed against removal.  Id.

In this case, BMA asserts that federal diversity jurisdiction exists, which requires

complete diversity of citizenship of the named parties and an amount in controversy in excess of

$75,000, exclusive of interests and costs.  28 U.S.C. §1332(a)(1).

**Jurisdictional Amount**

On September 17, 2007, the undersigned issued an order requiring BMA (the removing

party) to file a memorandum setting forth specific facts establishing that the required

jurisdictional amount is met in this case.[10]  *See* Simon v. Wal Mart Stores, 193 F.3d 848 (5th Cir.

1999);  Luckett v. Delta Airlines, Inc., 171 F.3d 295 (5th Cir. 1999).  In response, BMA filed a

memorandum and supporting documentation showing that as a result of her injuries, plaintiff

---

[9] Rec. Doc. 22.

[10] Rec. Doc. 26.

4

Velma Tezeno underwent a lumbar fusion/decompression surgery on June 26, 2006.[11] Additionally, the claim summary from Ms. Tezeno's workers' compensation carrier shows that as of April 5, 2007, she had incurred in excess of $28,000 in medical expenses.  Moreover, BMA cited cases where general damages of $150,000 to $175,000 were awarded to plaintiffs with injuries similar to Ms. Tezeno's.

Considering the foregoing, and the fact that plaintiffs do not challenge the amount in controversy in the pending motion to remand, the undersigned concludes that the that the required jurisdictional amount has been established.[12]  Therefore, federal diversity jurisdiction exists if there is complete diversity of parties.

**Diversity of Parties**

When the face of the complaint demonstrates that complete diversity does not exist, the removing defendant "bears a heavy burden of proving that the joinder of the in-state party was improper." Smallwood v. Illinois Central Railroad Company, 385 F.3d 568, 574 (5th Cir. 2004). A defendant may remove such a case to a federal forum when the in-state defendant has been improperly joined.  In determining whether the joinder was proper, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." Id. at 573.  The Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id.

_____

[11] Exhibit A to Rec. Doc. 27.

[12] The undersigned notes that in the event that the court does not find that Tezeno's husband's consortium claims meet the jurisdictional amount, the court may have supplemental jurisdiction over these claims because the claims are so closely related to the claims of Velma Tezeno that they form part of the same case or controversy.

5

BMA has not alleged fraud in the pleading of jurisdictional facts, i.e., an allegation that one party is a citizen of Louisiana when that fact is demonstrably false.  Thus, the jurisdictional inquiry is limited to whether BMA has proven that plaintiffs *cannot* establish a cause of action against the Louisiana defendant.

"[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not."  <u>Id</u>.

In order to determine whether a plaintiff has a reasonable basis of recovery, the court may resolve the issue in two ways:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.  That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.  In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.  In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings.  Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and

6

quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined.  Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."

Id. at 573-74.

***Claims against LaMarche***

The First Supplemental Complaint alleges the following as to LaMarche:

18.

LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, is the owner of the building in which the facility in question is located.

19.

In the event the excessive water under the rug is deemed not to be solely the result of negligence of BIO-MEDICAL APPLICATIONS OF LOUISIANA, L.L.C., the plaintiffs allege, in the alternative, that such excessive water underneath the rug was caused by a defect, vice, or ruin of the exiting apparatus used by the plaintiff in the building in which the facility in question was located.

20.

LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, knew, or if LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II,, would have exercised reasonable care, should have known, of the vice or defect which caused the plaintiff's damages.

21.

Furthermore, the plaintiff's damages could have been prevented if LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, would have exercised such reasonable care.

22.

LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, did not exercise such reasonable care.

23.

7

Plaintiff alleges that defendant, LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, is liable to plaintiff in strict liability and negligence as it is the owner of the premise in question at the time of the accident and had actual and/or constructive knowledge of the defect of the premises for a substantial period of time and failed to take reasonable measures to remedy the defective premises.

24.

Accordingly, LAMARCH, ZEIK, CLARK & LEBRON PROPERTIES, II, is liable to plaintiffs herein in negligence and strict liability pursuant to the provisions of La. Civil Code arts. 660, 2315, 2317.1, and 2322, for the following particulars, to-wit:

a)      Failure to maintain the building in question in a reasonable state of repair;

b)      Allowing the building in question to remain in a state of ruin/disrepair despite having constructive and actual knowledge of its condition;

c)      Failing to warn users of the building in question of the unreasonable risk of harm presented to users of the facility in question;

d)      Failure to repair the building in question in a timely manner despite having constructive and/or actual knowledge of its conditions;

e)      Other acts of fault, negligence and/or strict liability to be proven at trial.[13]

As discussed above, in order to determine whether plaintiffs improperly joined

LaMarche, the court must assess whether plaintiffs have a reasonable basis of recovery, either by

applying a Rule 12(b)(6)-type analysis or, in rare circumstances, a summary judgment-type

analysis.[14]  The undersigned concludes that the appropriate analysis to be used in this case is the

---

[13] Rec. Doc. 9.

[14] A motion to dismiss under Rule 12(b)(6) "'may be granted only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations'." Meadowbriar Home For Children, Inc. v. G.B. Gunn, et al., 81 F.3d 521, 529 (5th Cir. 1996), citing Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995).  The allegations in the complaint are construed favorably to the pleader and accepted as true for purposes

8

Rule 12(b)(6) analysis, because there is no evidence that plaintiffs have "misstated or omitted discrete facts" that would require a summary judgment-type analysis.

Thus, if there exists any possibility of recovery on one of plaintiffs' claims against LaMarche, the case must be remanded. Gray v. Beverly Enters.-Miss., Inc., 390 F.3d 400, 412 (5th Cir.2004).  All disputed questions of fact and ambiguities of law must be construed in the plaintiff's favor.  Travis v. Irby, 326 F.3d 644, 648 (5th Cir.2003).  Furthermore, the court must be mindful of the fact that plaintiff has not had sufficient time for discovery. "Simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for (the plaintiff) to establish (the defendant's) liability at trial." Id. at 651.

Plaintiffs have alleged negligence and strict liability claims against LaMarche under Louisiana Civil Code articles 2315,[15] 2317.1,[16] 2322,[17] and 660.[18]  "The 1996 legislation enacting

---

of the well-pleaded complaint rule.  Id., 81 F.3d at 529; see also La Porte Constr. Co. v. Bayshore Nat'l. Bank, 805 F.2d 1254, 1255 (5th Cir. 1996).  The district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  Jefferson v. Lead Industries Ass'n., Inc., 106 F.3d 1245, 1250 (5th Cir. 1996), citing Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993).

The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  Id., 106 F.3d at 1250, citing Fernandez-Montes, 987 F.2d at 284, 285; Leffall v. Dallas Independent School District, 28 F.3d 521, 524 (5th Cir. 1994).  However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  Id., 106 F.3d at 1250, citing Fernandez-Montes, 987 F.2d at 284, 285; Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

[15] Louisiana Civil Code art. 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[16]  Louisiana Civil Code art. 2317.1 provides:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

9

La. C.C. art. 2317.1 and amending La. C.C. art. 2322, effective April 16, 1996, abolished the

concept of strict liability governed by prior interpretation of the pre-1996 versions of La. C.C.

arts. 2317 and 2322.  *See* Dennis v. The Finish Line, Inc., 99-1413, 99-1414, p. 5 n. 8 (La.App.

1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319; 12

William E. Crawford Louisiana Civil Law Treatise: Tort Law §§ 19.1, 19.2 (2nd ed.1996).  A

more appropriate term now for liability under La. C.C. arts. 2317.1 and 2322 might be 'custodial

liability,' but such liability is nevertheless predicated upon a finding of negligence. *See* Rogers v.

City of Baton Rouge, 04-1001, pp. 4-5 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1102, writ

denied, 05-2022 (La.2/3/06), 922 So.2d 1187." Broussard v. Voorhies, ____ So. 2d _____, 2007

WL 2713339, *2  (La.App. 1 Cir. 2007); *see also* Benjamin v. Housing Auth. of New Orleans,

2004-1058 (La. 12/1/04); 893 So.2d 1, Fn. 5.

---

[17]  Louisiana Civil Code article 2322 addresses liability for a defective building:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction.  However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

[18] Louisiana Civil Code article 660 mirrors article 2322:

> The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby.  However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

10

In order to recover against LaMarche, plaintiffs must prove: 1) that the defendant knew or should have known of the vice or defect; 2) that the damage could have been prevented by the exercise of reasonable care; and 3) that the defendant failed to exercise reasonable care. Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496, p. 5 (La.App. 4 Cir. 11/10/98), 723 So.2d 1004, 1007.  Plaintiffs must also prove under article 2322 "either a building or its 'appurtenance' and a 'ruin' that presents an unreasonable risk of harm caused by neglect to repair or a vice in the original construction." Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 14-6 (1996).  Moreover, "even if a property owner has contracted away his responsibility for maintaining his premises to his lessee, the owner can still be held liable if he knew or should have known of a defect in the property and failed to remedy it within a reasonable time." Palermo v. Port of New Orleans,  2004-1804, p. 14 (La.App. 4 Cir. 1/19/07), 951 So.2d 425, 436, citing Faulkner v. The McCarty Corp., 2002-1337 (La. App. 4 Cir. 6/11/03), 853 So.2d 24, 29(citing Audler v. Board of Comm'rs of the Port of New Orleans, 617 So.2d 73, 77 (La.App. 4th Cir.1993)).

As discussed above, it is not necessary for plaintiffs to show that they have sufficiently stated *all* of their claims, but rather the possibility of recovery on any one of plaintiffs' claims requires that the case be remanded.  Gray, 390 F.3d at 412.  Plaintiffs have alleged the facts necessary to state a claim against LaMarche as the owner of the building under Louisiana Civil Code articles 660 and 2322.  It is undisputed that LaMarche owns the building.  As the owner, LaMarche can be held liable for plaintiffs' injuries if there was a defect in the building which led to plaintiffs' injuries and LaMarche knew or should have known of the defect.[19]  Plaintiffs have

---

[19]  See Louisiana Civil Code articles 660 and 2322.

11

alleged that there was excessive water underneath the rug which plaintiff Velma Tezeno slipped on and that the excessive water was caused by a defect in the LaMarche building.  Plaintiffs also allege that LaMarche knew or should have known of the defect and that LaMarche failed to remedy the situation.  These factual allegations are sufficient to show that LaMarche was not fraudulently or improperly joined.

Although BMA submitted summary judgment type evidence in opposition to the motion to remand, this evidence does not negate plaintiffs' claims, but rather simply supports BMA's version of events.  The affidavits of Pam Childs, a manager of BMA, and Maximo LaMarche, a partner in LaMarche, set forth that the affiants believe that LaMarche did not have control over the rug at issue, nor did the partnership have knowledge of any problem with the rug or any condition in the building that could have caused water to accumulate in the area of the rug.[20] Although these documents may support defendants' position, they do not "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  Smallwood, 385 F.3d at 573-574.  The affidavits are simply the counterpart to plaintiffs' complaint – plaintiffs allege that LaMarche knew or should have known of the defect in the building and defendants allege that there was no defect and that LaMarche did not know, nor should it have known of any defect.

Plaintiffs have articulated a legal basis for their claims against LaMarche.  Discovery may strengthen these claims.  BMA is correct that the mere presence of water under the rug does not alone establish that there was a structural defect in the building.  However, this is insufficient to

---

[20] Rec. Doc. 22, Exhibits A & B.  The lease between BMA and LaMarche was also submitted and establishes that BMA leased the building at issue.

12

negate plaintiffs' allegations that a structural defect in the building caused the accident because "[s]imply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for (the plaintiff) to establish (the defendant's) liability at trial." Travis, 326 F.3d at 651.

BMA "bears a heavy burden of proving that the joinder of the in-state party was improper." Smallwood, 385 F.3d at 574.  Merely showing that at this early stage plaintiffs have a lack of evidence does not meet this heavy burden.  Moreover, BMA has not shown an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court" because it is clear that plaintiffs have a cause of action against LaMarche as the owner of the building at issue.  Id.

### *Conclusion*

Considering the foregoing, and because removal statutes are to be construed strictly against removal and for remand,  plaintiffs' Motion to Remand[21] is **GRANTED** and this case is **REMANDED** to the 13th Judicial District Court for Evangeline Parish.[22]

Signed at Lafayette, Louisiana, on November 16, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

---

[21] Rec. Doc. 18.

[22] Plaintiffs' request for costs and attorney's fees is denied.